Robert Johnson for Petitioner Abdullah Alkhalidi Mr. Alkhalidi's State Court counsel failed to communicate an extremely favorable offer of a plea. The disparity and likely sentence under the plea versus a trial was over 30 years, and that disparity was particularly significant given the extent of the evidence arrayed against Mr. Alkhalidi. Moreover, we know that Mr. Alkhalidi was interested in a plea as the offer was the result of a meeting at the prosecutor's office where Mr. Alkhalidi solicited a plea. Despite all that, the State Court found that Mr. Alkhalidi was not prejudiced, reasoning that given his protestations of innocence, he had not established that he would have accepted a plea. So can I ask you this? Obviously we are looking at all of this through the lens of AEDPA, and I'm not sure that it's only that the State Court was listening to his protestations of flop back and forth, particularly before we get to post-conviction, particularly at the moment. And he seems to be interested in a plea, but then he sort of flips over and he's talking about counteroffers, and then he has some theory that the charges weren't properly stated in the indictment, and he has other fairly technical ideas of his own. He's not legally trained, so he has these ideas. But why isn't it fair to say that the State Court of Appeals looks at this somewhat messy set of signals from Mr. Alkhalidi, and they resolve that messy record in favor of thinking, this guy was just bound and determined to go to trial and try these not terribly promising theories, and so we're going to find no prejudice. Why isn't that just a finding that we have to defer to? Well, two things, Your Honor. First, I would say that the basis that the State Court gave is clear from the State Court's decision. It's at pages 103 to 104 of the appendix. And what the State Court first does is lays out a list of six bullet points to set forth essentially the background facts of this case. And then having done so, it states its conclusion in the following paragraph. And it says, as its conclusion, that given Mr. Alkhalidi's protestations of innocence, we find that he has not established that he would have accepted the plea. But I understand when they say innocence, I guess I'll talk about real innocence versus technical or something. Because Mr. Alkhalidi is saying to the court, the time's already expired, the crime had to be dismissed. So he's saying you couldn't have convicted me. I mean, that kind of innocence. Not necessarily I didn't do it kind of innocence. Well, I think there's an important distinction, Your Honor. Those statements are made at the pretrial hearing, and they don't refer to the charges in the indictment. They refer to the offense that was proposed that he could plead to. And what he is saying in the pretrial conference is that he doesn't believe that he could have accepted the plea, because he thought that it was not appropriate or not allowed to plead guilty to an offense that wasn't charged in the indictment and was otherwise barred by the statute of limitations. And now as we explain in the brief, that's simply not true as a matter of state law. And the state trial judge said as much on the record. But that was Mr. Alkhalidi's mistaken impression. I think we have to presume that if this plea had been communicated to Mr. Alkhalidi, that his attorney would have both communicated the plea, but also would have appropriately advised him that that was simply a misunderstanding of state law. And I think the fact that he held that misunderstanding, far from defeating his claim, just shows how deficient the performance here was that this basic issue had never even been explained to him. So we know that a couple of the investigators, right, did visit him in the jail during the window that the plea was opened. Do we know anything about phone calls to this jail? There's a reference to personal visits that seem to be recorded on a rather casual basis, since they don't include everybody. And there was a reference to something else, but I didn't see anything about phone calls. Mr. Alkhalidi testifies at the post-trial hearing that there was no occasion where his attorney ever called him at the jail, and that that simply did not occur. All right, so there's just none. Mr. Jones, about Mr. Alkhalidi's determination that he might make a counter-offer, if plea negotiations are going to be analyzed under contract principles, does that counter-offer then take off the original offer, and does that put him in a less advantageous position? Well, I'd say two things, Your Honor. One is that the Supreme Court, or excuse me, the Sixth Circuit in the Cooper v. Lafler decision, which has been adopted by the Supreme Court in Lafler v. Cooper, said that the fact that somebody might have wanted to negotiate a better offer doesn't mean that they wouldn't have accepted an offer that was on the table. And what Mr. Alkhalidi says is he certainly would have wanted to consider making a counter-offer, but I think that Mr. Alkhalidi, again, presuming that he would have been appropriately advised, as this Court said in Julian, that the idea that you would turn down a 30-year disparity in sentence over the remote chance that you might be acquitted would just be, it's hard to believe that anybody would do that. I think if we presume that he'd been appropriately advised, that he would not have made a counter-offer. Assuming that he had made a counter-offer, I still think there's... You mean it's an irrational decision, so you couldn't believe it? I think that certainly there's a reasonable probability that he would have accepted this disparity in sentence. This is an irrational being to begin with. He wouldn't have had the pickle he was in. Well, I think that if you look at the way, for instance, this Court analyzed these issues in Julian, what we look at in Julian, there was a combination of testimony plus these other objective factors, like the disparity in sentence, the extent of the evidence. Did he ever unequivocally say he wanted a plea? Yes. He said several things. One, I think at the pretrial conference, he made very clear that he was interested in engaging in plea negotiations, which is why he first off mentioned that he was upset that the offer wasn't communicated. Second, when he mentions that he wants to make a counter-offer, that at the very least indicates he's... A counter-offer, as I recall correctly, is a rejection of the original offer. Well, Your Honor, I'm not aware of any case that suggests that prejudice under Strickland turns on the sort of state contract law question of whether you accepted the first offer or a second offer. I think there's a very reasonable probability... It's a very different contract, a state contract, than this regular one, but it's still a contract. Well, yes, but Your Honor, I think under the question under Strickland is whether there's a reasonable probability that the result of the proceeding would have been different. I think there's a reasonable probability if he had made a counter-offer and that counter-offer had been rejected, that the original offer then would have still been on the table. Whether that would have been the same offer or a different offer as a matter of state contract law, just as a matter of... Well, it's a matter of the prosecutor's willingness, too. I mean, if Mr. Al-Khalidi, who may not be the world's most rational person, thought that it should be a 15-year sentence instead of 20 or 30 or whatever, I mean, there's no reason to think that the prosecutor would have accepted that. The prosecutor is certainly under no obligation to accept that because it's significantly different. And again, through epideference, in a way, it's a question of fact. Was there a reasonable probability that he would have pleaded guilty? And I understand them to be saying, frankly, no, not on this record. Now, I might come out differently. I might read this and think, actually, the truth is he was just full of hot air and actually would have grabbed it. But I'm not the one who's deciding. The state court's deciding. Your Honor, I do want to save some time for rebuttal, but I think that it's important to remember in this case that not only do we have facts under which I think there's a very good chance, certainly a reasonable probability, that he would have accepted this plea, but we also have a situation where the state court's finding was made under the incorrect legal standard. And this court has indicated that no deference is warranted in that situation. And what the court here said was not that there was a reasonable – that they found no reasonable probability, but simply found that – Right. They said, would he have done it? Would he have done it? So why don't we stop on that note. We'll let you come back for your rebuttal. Thank you.  Mr. Kobe. May it please the court. The state court properly applied Strickland in finding no prejudice from the fact that counsel untimely communicated this offer to Mr. Appoliti. Why don't we start where Mr. Johnson left off? Unfortunately, our cases seem to be all over the block when it comes to these situations where a state court does a picture-perfect description of what Strickland calls for in the opening paragraph of the section dealing with Strickland and then on the prejudice part just drops the idea of a reasonable probability and spends the rest of the time talking about would he have accepted the offer. So you can find cases, and you cited them, in which we've said, well, you know, it's proximate enough, it was shorthand, it was, you know, something, but we think the state was using the correct standard. And you can find other cases in which, you know, like in Goodman against Bertrand where the state court leaves the reasonable probability language out multiple times, as happened here, and we said that was the wrong rule. I mean, there's a big difference between would have changed the outcome and reasonable probability. The Supreme Court has underscored that. So, you know, we have to decide on which side of the line this case falls. I think it's important first to look at the job that the Court of Appeals was doing here, and unlike this court when it reviews collateral challenges to a sentence, what the Indiana Court of Appeals does is give a deferential review. So it's the petitioner has to show that there was clear error or something that leaves an unmistakable impression that the judgment was wrong. And so when the Court of Appeals looks at this, it's reviewing it for deference. And so the defendant, or the petitioner here, has to show that there's no way that the post-conviction court could have found the way it did. And so in the Court of Appeals here, if you look at the last two paragraphs, in the second to last paragraph, which is paragraph 17, they point out that petitioner here can't show that the post-conviction court was wrong. In other words, he can't show that the post-conviction court's finding that he wouldn't have pled guilty and that the court wouldn't have accepted it are wrong. And so then they say, therefore, in paragraph 18, the post-conviction court did not err. So, yes. But what if the post-conviction court is using this would there be a difference as opposed to reasonable probability? Doesn't it just push the inquiry back a level? Well, I don't think so, because here the post-conviction court affirmatively found he would not have pled guilty. He would not have accepted this deal. So it wasn't dealing in probabilities. It actually found he would not have accepted it. And then it went on to say that the court wouldn't have accepted his plea even had he taken the deal. So, no probability is, obviously, meets the standard of some probability. Right. So let's focus for a minute on that second part, because I have to say, I've seen a lot of plea transcripts and negotiations where it's mostly in the federal context, but I don't think for this purpose that matters, where the trial judge is asking questions, particularly trying to create a factual basis for a plea, and the defendant keeps saying, but I'm really innocent. And the trial judge often will say, after a certain amount of that, look, this isn't a good candidate for a plea bargain, I'm just going to go to trial, never mind. And so that tells me that this stage of would the court have accepted a plea from Mr. Al-Khalidi is a significant step. And if the court, particularly with no Alford pleas, as I understand, in Indiana. So that might be something worth thinking about. Correct. And that is really, under the state law, the post-conviction court said, under state law, I would not have accepted the plea. And this is the post-conviction court who had interacted with the petitioner on many occasions and had very difficulty pinning petitioner down to answer many questions. He always wanted to answer something different than what the court was asking. And so from the court standpoint, it didn't believe that he would actually admit to the charges here so that she could accept the plea. I just want to point out, too, that I don't think there's a very good job, or a complete job in our brief about the sentences or the difference between the plea agreement and what he was facing. Given the procedural posture of this case, he was only facing the max of 65 years, because he had been sentenced at his first trial to 65 years, and he had gotten post-conviction relief. And under Indiana's post-conviction relief rules, he can't get a longer sentence. I wondered about that. So the earlier 65 capped his exposure. Right. So he was facing a max of 65. The max under the offer was 52 years. So that was very close. Especially if you look at, throughout petitioner's attorney, he wanted something much less than that. He wanted to go home. In fact, his complaint about his attorney was that his attorney didn't get him a deal of time served at the time. And that was the real problem. So really he was complaining about that the state wasn't coming back to him with an offer he would accept. I just point out, too, that at the time, contemporaneous with the hearing, the state said that it extended the offer and he still rejected it. So there's just no showing in this record that he would have accepted the plea. And here, on deferential review, in the first instance, I don't think he can show he would have accepted the plea, because there's just not the corroboration that this court has required. But in the deferential review, the state court made a reasonable determination in finding he wouldn't have accepted the plea. And of course the jury, getting all the way back, it's something we don't need to worry about, but the jury rejects his story that he's just driving behind this other guy in the car. They convict him on murder. Correct. And I will point out that he didn't testify at his first trial, and so I think there's a fair inference that he thought he could explain his involvement away at the second trial. So he had a shot of walking away with no conviction or a conviction to a very low offense. There are no further questions. We ask that you affirm the district court. Thank you. All right. Thank you. Mr. Johnson. You have about a minute. Thank you, Your Honors. I just want to clear up a few, I think, important factual points that were mentioned during my friend's argument. The first is the disparity in sentence. And there's a maximum, a minimum, and then what's called the advisory sentence. And the 65-year sentence at the first trial was the advisory sentence. That's sort of, I think, the default sentence that's going to be handed down in any case. Under the plea, the advisory sentence would have been 30 years. So the disparity in 30 years that I mentioned is based not on the maximum. It's based on the advisory sentence. And I think that, I just want to make sure that's clear. The second point I want to clear up is, counsel said that the court affirmatively found that he would not have accepted the offer. And I just want to be clear, that's not true. What the court found was that given Mr. Al-Khalidi's that he repeatedly emphatically stated that he was innocent of the murder and robbery charges, we find that he has not established that he would have accepted the plea offer. In other words, not that he would not have accepted it, but that he had not established. I thought Mr. Kobe was talking about what the trial level post-conviction court said. I don't think there's any difference. I think the operative opinion here is what the state court of appeals found, not what the state trial court found. I don't believe the state trial judge makes that finding either. But I do think it's important just to be clear about that. To make one final point, Judge Wood, you mentioned that the question of which line does this case fall on in terms of the line where a court misstates the standard at its conclusion. I think if you look at this court's decisions in Thomas and Jones and Mosley and Martin versus this court's decision in Sussman, the line that emerges is one where if you look at the state court's analysis, is it clear from the state court's analysis that the decision would have come out the right way even under the proper standard? Or come out the same way even under the proper standard? I just don't think that's clear from the record in this case. Thank you very much. You took this case by appointment, I believe. I did. We appreciate very much your efforts on behalf of your client and for the court. Thank you. Thanks as well, Mr. Coby. We will take the case under advisement and the court will be in recess. Thank you.